Howkt, J.,
delivered the opinion of the court:
Plaintiff was an officer in the Volunteer Signal Corps of the Armjr on duty in the Philippine Islands during the war with Spain. Under telegraphic instructions from the WTar Department dated April 20, 1899, he was relieved from duty with directions to leave Manila on the first transport for San Francisco and to proceed thence to his home at Mount Vernon, Ill., for honorable discharge. Pursuant to the order, plaintiff left Manila Maj7 7, 1899, and arrived at San Francisco on June 2 thereafter, and in a few days from that time he left San Francisco, arriving at Mount Vernon on the night of June 12, 1899, when and where he was mustered out. of the service.
Plaintiff claims his travel within the United States from San Francisco, Cal., to Mount Vernon, 111., 2,449 miles, as mileage at the rate of 7 cents a mile, $171.43, less the sum of $55 actual expenses, which has been paid, leaving due to him a balance of $116.43, as he claims, for mileage.
The case is one of a class of cases of general importance by reason of the number of officers w7ho have presented, or may hereafter present, claims for mileage over and above actual expenses allowed by the accounting officei’s, for that part of a journey not performed at sea.
The question involved is as to the application and construction of the act making appropriations for the support of the *78 Regular and Volunteer Army for the fiscal year ending June 30, 1900, approved March 3, 1899 (30 Stat. L., 1068).
The act in question provides:
“That hereafter the maximum sum to be allowed and paid to any officer of the Army shall be seven cents per mile, distances to be computed over the shortest usually tiweled routes; * * * Provided further, That actual expenses only shall be paid to officers when traveling to and from our island possessions in the Atlantic and Pacific oceans.”
The first contention is that the act limiting the officer to actual expenses can not be applied, as most of the provisions of that act were not intended to take effect until the beginning of the fiscal year succeeding its passage, and as the journey for which mileage is now claimed was completed in June before the commencement of the next fiscal year the liability of the Government for mileage is governed by the act approved March 15, 1898, making appropriations for the support of the Army for the fiscal year ending June 30, 1899 (30 Stat. L., 318, 321).
In support of this contention it is argued that, in the absence of any language in the act of 1889 showing that the proviso therein was intended to take effect immediately, it is unreasonable to suppose that it was intended that the act should go into effect before the following July, especially because many of the officers to be affected by it were at distant points, where it might be months before they would learn the particulars of its provisions.
It is true the act in question was an appropriation act carrying appropriations for a fiscal year subsequent to the time the travel was performed, but it recites in express words that, “hereafter (that is, from March 3, 1899) the maximum sum to be allowed and paid officers, shall be 7 cents per mile.” This provision is followed by provisos, the last of which linfdts the officers who are to receive a reduced mileage to actual expenses in case of travel to and from our island possessions. The legislation was adopted, no doubt, with reference to the termination of hostilities with Spain and the increased travel across the sea rendered necessary by new conditions growing out of the permanency of our new possessions without reference to the knowledge or want of *79 knowledge of the changes made by the act on the part of officers in the islands being then relieved from duty or soon thereafter to be ordered home. The proviso, in our opinion, became effective with the approval of the act which antedated the travel of this officer.-
The real question is presented where travel is performed to or from the islands and part of the journey becomes an inland journey. Shall an officer in such case have mileage for the land travel or does the restriction, certainly applicable to ocean travel, continue to be applied for travel on land?
.Referring to the discrimination made between the different kinds of travel, this court, speaking through the present Chief Justice, in the case of Hutchins v. United States (27 C. Cls. R., 137), said:
“The legislation on this subject must not be regarded as arbitrary, but as founded on some just and rational principle. Travel abroad ordinarily involves long ocean voyages, where mileage ceases to be reimbursement and becomes emolument. Travel at home is usually for shorter distances, and involves innumerable petty disbursements, running down to 10 cents for a street car or 35 cents for a dinner, as may be seen in the annual reports of the Attorney-General. The purpose of the statutes undoubtedly is that the reimbursement for traveling expenses abroad shall be the actual outlay of the officer, and for traveling expenses at home shall be commuted in the form of mileage.”
On appeal to the Supreme Court, Mr. Justice Brown said:
“ Why officers are allowed by Congress mileage in one case and not in the other is not altogether clear, but probably the view suggested by the court below is correct, viz, that traveling at home is ordinarily for such short distances, and the disbursements therefor are generally for such petty amounts, that to save the necessity of the officer keeping a minute account of each outlay, and the accounting officers of the Treasury passing upon the reasonableness of every small item, it was thought better to allow the officer a fixed mileage by the shortest traveled route, leaving him at liberty, under certain circumstances, and where his orders were not to proceed by a particular route, to choose his own.” (151 U. S., 542.)
The decision in the Hutchins case, though cited bjT counsel for the plaintiff, does not settle the issue here. There the question was whether, under á statute providing mileage for *80 an officer while traveling tinder orders in the United States, but limiting him to actual traveling expenses while traveling abroad, the officer was to be considered as traveling in the United States, measured by the nearest traveled route when the travel was performed, under orders from San Francisco to New York by way of the Isthmus of Panama. In the conclusion reached by this court that travel abroad or within the United States should be determined by the termini of the journey rather than by the route actually taken, the Supreme Court concurred and the judgment was affirmed.
In the enactment under which the present claim is made the principle of reimbursement for actual outlay is applied to ocean travel to and from the island possessions of the United States. In qualifying the compensation to actual expenditures for a journey to or from the islands the proviso is not stated in language that admits of an interpretation which will justify payment of mileage for one part of a journej^ and actual expenses for another part of the same journejL The statute does not so divide up the travel as to convey the intention of Congress to provide actual expenses at sea and more than actual expensed on land. The whole subject seems to have been reimbursement from start to finish. Certainly if an officer is ordered from his post of duty in Washington to Guam, and he makes the journey pursuant to orders, he is traveling to one of our island possessions the moment he begins the trip. If he leaves Manila for Mount Vernon, Ill., as this officer did, the entire travel is a single journey, not to be broken by unnecessary delays, for the expenses of which the officer must be reimbursed, but not compensated beyond the amount necessarily expended. The officer undertaking such a journey does so under orders to leave a particular point in the islands and come to a special place here, or vice verm. With knowledge that all the journey for which the officer could be paid must be undertaken under and pursuant to orders, Congress made no discrimination in the method of compensation for the two kinds of travel required when the journey was to or from the islands. That body might well have made the discrimination in view of the reason set forth in the decision of the court in Hutchins (supra), if it was desired to give the officer the difference between what he would be obliged to expend and Y *81 cents per mile, from which he might save something. No doubt the reason stated in the decision influenced Congress to continue the policy of mileage. for ordinary travel on land. But it seems clear to us that the distinction was not continued for travel like that under consideration. It is not for the court to interpolate a meaning which the framers did not express. For us to differentiate a journey to or from the islands into inland travel and ocean travel, and measure out emolument for the one and-reimbursement for the other, would be to make the law and not to construe it.
Petition dismissed.